# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| COHERENT ECONOMICS, LLC, | |
| Plaintiff, | Case No. 18-cv-8376 |
| v. | |
| VERITION PARTNERS MASTERS FUND, LTD, *et al.* | |
| | Judge John Robert Blakey |
| Defendants. | |

| | |
|---|---|
| W. BRADFORD CORNELL, *et al.*, | |
| Plaintiffs, | Case No. 18-cv-8377 |
| v. | |
| VERITION PARTNERS MASTERS FUND, LTD, *et al.* | |
| | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

These related cases arise from an expert witness retention gone awry. In 2015, Defendants Verition Partners Masters Fund, Ltd. and Verition Multi-Strategy Master Fund, Ltd. owned AOL stock. After Verizon acquired AOL, Defendants sued Verizon for an appraisal of the stock value in Delaware Chancery Court. For that appraisal action, Defendants retained Plaintiffs Coherent Economics, LLC

(Coherent), Bradford Cornell, and San Marino Business Partners LLC (San Marino), to fashion an expert economic valuation of the stock.

Defendants ultimately lost the appraisal action and, dissatisfied with Plaintiffs' service, sent demand letters threatening to sue them. Before Defendants could sue, however, Plaintiffs sued Defendants in two separate lawsuits here—one initiated by Coherent, and the other by Cornell and San Marino. Defendants then filed their own suit against Plaintiffs in Delaware, and now move to dismiss Plaintiffs' lawsuits here based upon the anticipatory filing doctrine. For the reasons explained below, this Court grants Defendants' motion and dismisses these cases without prejudice.

## I.    The Complaints' Allegations[1]

### A.    The Parties

Plaintiff Cornell is a visiting professor of financial economics at Caltech. [BC] ¶ 8. Cornell also serves as an economics consultant and expert witness through Plaintiff San Marino, a company for which Cornell serves as the sole member. *Id.* ¶¶ 3, 8. San Marino maintains a contract with Plaintiff Coherent, a company that provides expert witness and litigation support services for financial disputes. *Id.* ¶ 9.

---

[1] This Court takes these facts from Plaintiffs' complaints. In this opinion, this Court cites to Coherent's complaint using [CE], and to Cornell and San Marino's amended complaint using [BC]. Because Plaintiffs' complaints contain like allegations about Verition and the events leading up to these suits, this Court sometimes cites one complaint for a proposition that applies to all Plaintiffs. Citations to docket numbers refer to filings in Coherent's case.

Defendants Verition Partners Master Fund, Ltd. and Verition Multi-Strategy Master Fund, Ltd. are both companies organized under Cayman Islands law. *Id.* ¶¶ 4–5. For ease of reference, both Defendants will be referred to as Verition for the remainder of this Court's opinion.

### B. The Retention

In 2015, Verition owned stock in AOL. [CE] ¶ 6. Pursuant to a merger agreement, in May 2015, AOL merged with Verizon Communications, Inc. *Id.* ¶ 7. After the merger, Verition filed an appraisal action against Verizon in Delaware Court of Chancery, *id.* ¶ 8; in February 2016, it retained Coherent and Cornell to provide economic consulting services for the appraisal action under a retention agreement, *id.* ¶ 10.

### C. The Settlement

In January 2017, Verition disclosed Cornell as an expert witness in the appraisal action. *Id.* ¶ 15. Verition subsequently called Cornell as a testifying expert witness at trial. *Id.* ¶ 17. After trial, Verition refused to pay any of Coherent's outstanding invoices, but their attorneys subsequently negotiated a discounted amount for Coherent's services. *Id.* ¶¶ 19–20. On May 1, 2017, Coherent submitted to Verition a "final invoice" for the appraisal action, leaving a balance of $750,000. *Id.* ¶ 21. Coherent received payment for the balance on May 2, 2017. *Id.* ¶ 22.

### D. The Demand Letter

More than a year later, on December 11, 2018, Verition delivered a demand letter to Coherent, demanding $25.2 million and interest, and claiming that Coherent

violated the retention agreement. *Id.* ¶ 23. In that demand letter, Verition made several claims, including:

- Prior to retaining Cornell, Cornell actively and repeatedly solicited Verizon; during these solicitations, Cornell told Verizon he believed Verition's case was "shitty" and that Verizon had "the better side of the case." [CE] Ex. D at 2. At the time Cornell made these comments, he maintained an affiliation with another expert consulting firm, Compass Lexecon. *Id.* at 2–3.

- Cornell, however, switched his affiliation to Coherent when he learned that Verizon ultimately retained Professor Daniel Fischel, a Compass Lexecon expert. *Id.* at 3.

- In November 2015, after Verizon retained Fischel over Cornell, Cornell sent Fischel an email, stating: "Like you I tend to bear grudges. . . . So when Verizon [ ] chose you without even talking to me further that leads to a grudge against them. Consequently, I have had some conversations with [Verition]." *Id.* at 3–4.

- In a later exchange with Fischel, Cornell stated that his "main concern [in working for Verition] is that [Verition has] a shitty case . . . so I will have to be careful to avoid letting my grudge lead to a situation where I threaten my reputation." *Id.* at 4.

- Verizon's counsel obtained these and other communications during discovery and exploited them during Cornell's cross-examination at trial and post-trial briefing, exposing Cornell's bias. *Id.* at 4, 5.

- As a result, the Delaware court sided with Verizon, adopting—with minor adjustments—Fischel's valuation model over Cornell's. *Id.* at 5.

The demand letter then outlined several Delaware causes of action Verition intended to bring against Coherent, including: (1) breach of contract; (2) fraudulent inducement and concealment; (3) aiding and abetting fraud; and (4) professional malpractice. *Id.* at 7. At the end of the letter, Verition states:

> We write to give Coherent the opportunity to remedy this before Verition commences litigation.
>
> In the complaint to be filed, Verition will seek to have Coherent held jointly and severally liable for approximately $25.2 million, which represents the difference between the fair value of Verition's shares according to Coherent's expert Professor Cornell and the value Verition received from the court, plus interest thereon of $5.5 million, and any other damages to which Verition is entitled at law or equity.
>
> ***
>
> However, in an attempt to avoid litigation and the prospect of the embarrassing disclosure of Coherent's role in the fiasco, Verition is willing to negotiate during a short window.
>
> In any event, we direct Coherent to preserve all documents pertaining to the Appraisal Action, the retention of Professor Cornell, and the above-described issues. We expect Coherent to place a litigation hold as of the date of receipt of this letter.
>
> This letter is written subject to and without waiver of our clients' rights, all of which are reserved. I look forward to your response. Please direct all communications concerning this matter to my attention. If we do not hear from you within 10 days, we have been instructed to commence legal action against Coherent.

*Id.*

The same day, December 11, 2018, Verition delivered a similar demand letter to Cornell, outlining certain Delaware claims Verition intended to bring against him. [BC] ¶¶ 26–27; [BC] Ex. D.  Like the letter to Coherent, Verition's letter to Cornell warned: "If we do not hear from you within 10 days, we have been instructed to commence legal action against you."  [BC] Ex. D at 7.

### E.    The Lawsuits

Nine days later, on December 20, 2018, Plaintiffs filed their complaints with this Court, seeking declaratory judgments that the prior settlement among the parties bars any claims that Verition could bring against Plaintiffs relating to the retention agreement.  [BC] ¶ 28; *see generally* [CE].

On January 28, 2019, Verition filed its complaint in the Superior Court of Delaware against Cornell, San Marino, and Coherent.  [BC] Ex. F.  Consistent with Verition's demand letters, Verition's complaint stated claims for fraudulent inducement, fraudulent concealment, breach of contract, aiding and abetting fraud, and professional malpractice.  *Id.*  On February 25, 2019, Cornell, San Marino, and Coherent removed the case to the District of Delaware.  *See* Notice of Removal, *Verition Partners Master Fund, Ltd. et al. v. Cornell et al.*, 19-cv-377-CFC, ECF No. 1 (D. Del. Feb. 25, 2019).  The Delaware case remains pending.

In April 2019, Cornell and San Marino amended their complaint with this Court, asserting, in addition to their declaratory judgment claim, claims for breach

of contract and breach of the implied covenant of good faith and fair dealing.  *See*
*generally* [BC].

## II.    Legal Standard

### A.    Improper Anticipatory Filings

Generally, when two similar actions exist, district courts dismiss, stay, or
transfer the second-filed suit.  *Serta, Inc. v. Oleg Cassini, Inc.*, No. 11-CV-8004, 2012
WL 2503959, at *2 (N.D. Ill. June 28, 2012); *Schwarz v. Nat'l Van Lines, Inc.*, 317 F.
Supp. 2d 829, 832 (N.D. Ill. 2004) ("When two similar actions are filed, the general
rule favors the forum of the first-filed suit.").  Notwithstanding, the Seventh Circuit
does not rigidly adhere to this "first-to-file" rule.  *Research Automation, Inc. v.*
*Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010).

In particular, the Seventh Circuit cautions that where similar actions "involve
a declaratory judgment action and a mirror-image action seeking coercive relief,"
courts should "ordinarily give priority to the coercive action, regardless of which case
was filed first."  *Id.*; *see also Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d
624, 629 (7th Cir. 1995) (district court did not abuse its discretion in dismissing a
first-filed declaratory judgment claim where the defendant filed a parallel trademark
infringement action).  Courts in this circuit thus do not enforce the first-to-file rule
where a first-filed declaratory judgment action constitutes an improper anticipatory
filing—one "made under threat of an imminent suit and asserting the mirror image
of that suit in another district."  *Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*,
239 F. Supp. 2d 870, 873 (E.D. Wis. 2003); *Channel Clarity, Inc. v. Optima Tax Relief,*

*LLC*, No. 14 C 8945, 2015 WL 721023, at *4 (N.D. Ill. Feb. 18, 2015); *Schwarz*, 317 F. Supp. 2d at 833.

**B.    Standard for Dismissal**

A district court may decline to exercise its jurisdiction over an improper anticipatory filing. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987); *see also Trippe*, 46 F.3d at 629 (a district court has "an ample degree of discretion" to defer to another federal proceeding involving the same parties and issues to avoid duplicative litigation) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)).

The Seventh Circuit has not yet articulated the exact rule or standard courts should employ when addressing motions to dismiss invoking the anticipatory filing doctrine. Nor do the parties urge any particular theory. At least one court, however, has considered such a motion under the Rule 12(b)(1)—as one seeking dismissal for lack of subject-matter jurisdiction. *See, e.g.*, *Wilson Sporting Goods Co. v. Nicklaus Golf Equip. Co.*, No. 03 C 1520, 2004 WL 783069, at *3 (N.D. Ill. Jan. 8, 2004). Another has construed such a motion as one brought under Rule 12(b)(3) for improper venue, noting "a motion seeking dismissal of a declaratory judgment action almost certainly implicates a separate coercive action filed in a different venue, and requires the court to choose one venue over another." *Channel Clarity*, 2015 WL 721023, at *3. Regardless, both Rules 12(b)(1) and 12(b)(3) require this Court to construe all facts and reasonable inferences in Plaintiffs' favor. *Silha v. ACT, Inc.*, 807 F.3d 169,

173 (7th Cir. 2015); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014). This Court thus considers Verition's motion with this standard in mind.

## III. Analysis

Verition moves to dismiss both pending actions, arguing that they constitute impermissible anticipatory filings. [25] at 10–12.

### A. Plaintiffs' Complaints Constitute Anticipatory Filings

This Court agrees that Plaintiffs' complaints here constitute improper anticipatory filings—made under "threat of an imminent suit and asserting the mirror image of that suit in another district." *Barrington Grp.*, 239 F. Supp. 2d at 873.

Namely, on December 11, 2018, Verition sent demand letters to Plaintiffs. [CE] ¶ 23; [BC] ¶¶ 26–27. The demand letters conveyed that Verition intended imminently to file suit by: (1) setting forth, with specificity, Delaware causes of action that Verition believed imposed liability upon Plaintiffs; and (2) instructing Plaintiffs to implement immediate litigation holds. [CE] Ex. D at 7; [BC] Ex. D at 7. Additionally, the letters warned: "If we do not hear from you within 10 days, we have been instructed to commence legal action against [you]." *Id.* The demand letters thus made clear not only that Verition believed it had valid legal claims against Plaintiffs, but also that its client specifically directed it to file a lawsuit if Plaintiffs did not respond within 10 days (by December 21, 2018). Instead of responding, however, Plaintiffs commenced their lawsuits in this district, doing so the day before Verition's

deadline for responding.  Given such facts, the record confirms that Plaintiffs sued under threat of Verition's imminent suit.

Further, the suits here constitute mirror images of Verition's later-filed lawsuit in Delaware.  Verition's Delaware action seeks to hold Plaintiffs liable for their alleged conduct in the appraisal action.  *See* [BC] Ex. F.  And, Plaintiffs' suits here seek declarations that Verition remains barred from bringing claims related to the appraisal action.  *See* [BC] ¶¶ 37–40; [CE] 25–26.

In short, because Plaintiffs filed their mirror-image suits in the face of clear threats that Verition would sue, this Court finds that they constitute improper anticipatory filings, and must be dismissed.  *See Channel Clarity*, 2015 WL 721023, at *4 (dismissal warranted where the plaintiff filed suit in the face of a cease and desist letter conveying the defendant's intent to file suit); *OMC LLC v. S&E Gourmet Cuts, Inc.*, No. 16-CV-833-WMC, 2017 WL 3484964, at *4 (W.D. Wis. Aug. 14, 2017) (dismissing improper anticipatory filing).

## B.  Plaintiffs' Arguments Must Be Rejected

Plaintiffs argue that their suits do not constitute improper anticipatory filings because Verition's demand letters did not say that Verition "intended to file suit in Delaware or any other forum."  Coherent Br. [27] at 6; Cornell Br. [25] at 13.  True, Verition's demand letters did not specify the forum in which it intended to sue. Tellingly, however, Plaintiffs offer no legal authority suggesting that a lawsuit can only be deemed anticipatory if brought in the face of a threat to sue *in a particular forum*.  Moreover, Plaintiffs' argument lacks merits where, as here, the appraisal

action took place in Delaware and Plaintiffs' demand letters cited Delaware law. In other words, it should have come as no surprise to Plaintiffs that Verition sued in Delaware.

Coherent also contends that its complaint cannot be labeled an anticipatory filing because Verition "waited approximately five weeks" after Coherent sued here to file in Delaware. Coherent Br. [27] at 6–7. Coherent argues that Verition's purported "delay" undermines Verition's position that it intended to imminently file suit. *Id.* This argument fares no better, because courts in this district have dismissed improper anticipatory filings despite relatively long delays between the first-filed declaratory judgment action and second-filed coercive action. *See, e.g.*, *Wilson Sporting Goods*, 2004 WL 783069, at *5 (forty-five days); *M Credit, Inc. v. Cadlerock, L.L.C.*, No. 03 C 1690, 2003 WL 21800017, at *5 (N.D. Ill. July 31, 2003) (twenty-eight days). Moreover, this Court notes that Plaintiffs filed their complaints here on December 20, 2018—just before the holidays, when attorneys, clients, and courts typically take vacations and close their offices. Under these circumstances, this Court does not believe that Verition unreasonably delayed in filing its suit.

Finally, Cornell and San Marino argue that this Court should not apply the anticipatory filing doctrine because they assert, in addition to their declaratory judgment count, affirmative contract-based claims. Cornell Br. [25] at 13–14. They rely upon *Illinois Blower, Incorporated v. Deltak, LLC*, in which the court found that the plaintiff and the defendant potentially had "cognizable claims against the other," and thus that neither plaintiff's nor defendant's suit constituted an anticipatory

filing. No. 04 C 0341, 2004 WL 765187, at *3 (N.D. Ill. Apr. 7, 2004). There, however, the plaintiff and the defendant *exchanged* letters pre-litigation; in those letters, each party made demands to the other related to an underlying contract. *Id.* at *1. Here, in contrast, only Verition sent demand letters threatening to sue. Therefore, only Plaintiffs' suits can be deemed anticipatory.

Further, the anticipatory filing doctrine remains viable even where plaintiffs assert affirmative claims in addition to their declaratory judgment claims. *See, e.g.*, *Diversified Healthcare, Inc. v. N.J. Morgan & Assocs. Inc.*, No. EV 00-233-C-M/H, 2001 WL 405592, at *4 (S.D. Ind. Mar. 28, 2001) (dismissing first-filed declaratory judgment action based upon the anticipatory filing doctrine where the plaintiff asserted an additional breach of contract claim, reasoning that it "could easily be brought as a counterclaim" in the second-filed action). Thus, Cornell and San Marino's additional contract-based claims present no bar to applying the anticipatory filing doctrine.

### C. Defendants' Other Grounds For Dismissal and Transfer

Verition also moves for dismissal on Rule 12(b)(2) and Rule 12(b)(6) grounds. [25]. Because, as discussed below, this Court declines to exercise its jurisdiction over these cases, it need not reach the merits of Verition's other arguments in support of dismissal. This Court underscores that it has not addressed the merits of the parties' Rule 12(b)(6) arguments, which the parties may raise in an appropriate forum at an appropriate time.

Finally, the parties presented oral argument regarding venue transfer, which Verition raises as an alternative to dismissal. [25]. Because, as noted above, this Court declines jurisdiction over this case, it need not necessarily reach the merits of Verition's transfer argument. Notwithstanding, this Court notes that Verition failed to provide a sufficient basis for this Court to transfer venue to Delaware.

This Court may transfer venue when three factors are met: (1) venue is proper in both districts; (2) transfer will better serve the convenience of the parties and witnesses; and (3) transfer will better serve the interest of justice. *See Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 959 (N.D. Ill. 2013) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). As the moving party, Verition has the burden of establishing that "the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219–20.

Verition has not met that burden here. Putting aside factors (1) and (3), Verition has not demonstrated that transfer would better serve the convenience of the parties and witnesses. As made clear during oral argument, the parties anticipate calling non-party witnesses residing in both Illinois *and* Delaware. Thus, the convenience to non-party witnesses—the most important factor in a transfer analysis—does not favor transfer. *See First Nat. Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). Nor does convenience to the parties favor transfer, because none of the parties reside in Delaware, and one party—Coherent— resides in Illinois. Thus, to the extent Verition's motion to transfer venue remains viable, this Court denies that request.

## IV.    Conclusion

For the foregoing reasons, this Court declines to exercise its jurisdiction over the pending actions and grants Verition's motion to dismiss without prejudice.  Any pending dates and deadlines are stricken.  Civil cases terminated.

Dated: February 14, 2020

Entered:

John Robert Blakey
United States District Judge
